## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### Southern Division

| | |
|---|---|
| **LOLA LUCIO, Individually,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :    **Case No. 4:22-cv-11031** |
| | : |
| **POULA INVESTMENT, LLC** | : |
| **A Domestic Limited Liability Company** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

### <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1, hereby moves for Summary Judgment. In accordance with L.R. 7.1 (a), concurrence was requested from defense counsel but Plaintiff did not obtain concurrence for the relief sought. Defendant did not agree with the legal conclusions of Plaintiff.

Plaintiff hereby incorporates the Memorandum in Support and further states as follows:

1.   Plaintiff has degenerative disk disease, suffers from mobility issues, must ambulate with a cane and qualifies as a disabled person within the meaning of Title III of the Americans With Disabilities Act ("ADA"), 42 U.S.C. Sections 12181, et seq.

2.    Plaintiff has visited the place of public accommodation, known as the Seven Lakes Party store at 3024 Grange Hall Road, Holly Michigan. Defendant is the owner of this property.

3.    While visiting Defendant's market, Plaintiff encountered numerous ADA violations which discriminated against her on the basis of her disability and the instant action was commenced for injunctive relief for the removal of those barriers to access.

4. By the facts established by Plaintiff's Rule 34 expert report, there are numerous violations of the Americans with Disabilities Act that discriminated against Plaintiff based upon her disability and still remain to this day.

WHEREFORE, Plaintiff respectfully requests that this Court enter Summary Judgment against Defendant based on the Rule 34 expert report, and require the Defendant to immediately bring its facility into full compliance with the ADA.  Plaintiff further seeks judgment for her attorney fees, costs, expert fees and litigation expenses.

Respectfully submitted,

Attorney for Plaintiff:

By: /s/ Pete M. Monismith
Pete M. Monismith, Esq.
3945 Forbes Ave., #175
Pittsburgh, PA 15213
Ph: 724-610-1881
Fax: 412-258-1309
Pete@monismithlaw.com
MI – P78186

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant is liable for the ADA violations existing at its place of public accommodation.  Defendant is liable for these violations because it owns a public accommodation containing ADA defined barriers to access that deny Plaintiff use and enjoyment of its facility.

Plaintiff Lola Lucio is a qualified person with a disability as that term is defined under Title III of the ADA.  Exhibit A.  Ms. Lucio visited Defendant's place of public accommodation and encountered barriers to access which discriminated against her on the basis of her disability.  Id.

On October 10, 2022, Plaintiff's expert performed a full inspection of the Defendant's premises, found numerous ADA violations, and made recommendations and costs with respect to the remedial measures required to bring Defendant's facility into ADA compliance.  Her affidavit and report is attached as Exhibit B.

Discovery ended on December 5, 2022. Defendant has not provided an expert report of their own to refute any of the findings of the expert of Plaintiff.

Therefore, since there is no genuine issue of material fact as to the Defendant's liability, the Plaintiff is entitled to summary judgment as a matter of law.

**STATUTORY BACKGROUND OF ADA LEGISLATION**

Congress enacted the Americans with Disabilities Act ("ADA") in 1990 to remedy widespread discrimination against disabled individuals.  In studying the need for such

legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem."   42 U.S.C. §12101(a)(2); *See also* 42 U.S.C. § 12101(a)(3) ("[Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services").

Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42. U.S.C. § 12101(a)(5).   After thoroughly investigating the problem, Congress concluded that there was a "compelling need...[for a] clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life."   S. Rep. No. 101-116, p. 20 (1989);  H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.Code Cong. & Admin.News 1990, pt. 2, pp. 303, 332.

In the ADA, Congress provided that broad mandate.   *See* 42 U.S.C. § 12101(b). In fact, one of the Act's "most impressive strengths" has been identified as its "comprehensive character."   Hearings on S. 933 before the Senate Committee on Labor and Human Resources and the Subcommittee on the Handicapped, 101st Cong., 1st Sess., 197 (1989) (statement of Attorney General Thornburgh).   Accordingly the Act has been

described as "a milestone on the path to a more decent, tolerant, progressive society." Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 375 (2001) (KENNEDY, J., concurring).

To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III).

The provisions of Title III are at issue in this case. Title III of the ADA prescribes, as a "[g]eneral rule":

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), operates a place of public accommodation."

42 U.S.C. § 12182(a).

The phrase "public accommodation" is defined in terms of twelve (12) extensive categories[1] which the legislative history indicates "should be construed liberally" to

---

[1]. "(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
"(B) a restaurant, bar, or other establishment serving food or drink;
"(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
"(D) an auditorium, convention center, lecture hall, or other place of public gathering;
"(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
"(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
"(G) a terminal, depot, or other station used for specified public transportation;
"(H) a museum, library, gallery, or other place of display or collection; "(I) a park, zoo, amusement park, or other place of recreation;

afford people with disabilities "equal access" to the wide variety of establishments available to the non-disabled.  Sen. Rep. No. 101-116, at 59;  H.R. No. 101-485, pt. 2, at 100, U.S. Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-383.

## CAUSES OF ACTION FOR ARCHITECTURAL BARRIERS IN PUBLIC ACCOMMODATIONS

Congress considered the importance of ensuring that private businesses and the ADA were compatible. *See* Hearing on S. 933 Before Committee on Small Business, 101st Legis., 2d Reg. Sess. (1990). To strike a balance between the interests of the disabled and the legitimate concerns of private business, the ADA delayed its effective date to "permit adequate time for businesses to become acquainted with the ADA's requirements and to take the necessary steps to achieve compliance." *Statement on Signing the Americans with Disabilities Act of 1990* at 2 (July 26, 1990).

Further, the ADA was crafted to "give the business community the flexibility to meet the requirements of the Act without incurring undue costs." *Id.* at 1-2. The modest requirement of "readily achievable" barrier removal on existing facilities "allows for minimal investment with a potential return of profit from use of disabled patrons, often more than justifying the small expense." S. Rep. No. 101-116, at 66 (1989).

---

"(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
"(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment;  and
"(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." § 12181(7) .

If a place of public accommodation fails to remove architectural barriers, the enforcement provisions of the ADA provides a private right of action.  42 U.S.C. § 12188(a)(1). A private action under Title III is available to any person who is "being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination . . . ."[2] 42 U.S.C. § 12188(a)(1). The ADA does not require "a person with a disability to engage in a futile gesture if such [a] person has actual notice that a person or organization . . . does not intend to comply" with the ADA.  *Id.*

Title III incorporates the remedies and procedures of Title II of the Civil Rights Act of 1964. *See* 42 U.S.C. §  12188(a)(1). The court may order injunctive relief which includes an order to make a facility "readily accessible." 42 U.S.C. §  12188(a)(2). Or, where appropriate, injunctive relief may include "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods . . . ." *Id.*

"There is a private right of action for enforcement of [the ADA] regulations to require [private] entities to implement nondiscriminatory standards and proceed to make necessary modifications." Schonfeld v. City of Carlsbad, 978 F. Supp. 1329, 1997 WL 595310, *4 (S.D.Cal. 1997) (private right of action exists for enforcement of Title II

---

[2]   The ADA allows a person to sue on behalf of a disabled individual upon "reasonable grounds" that said disabled individual will be subjected to discrimination only if the violation is related to "new construction and alterations." *See* 42 U.S.C. §  12183.

regulations to require public entities to make modifications); *See* 42 U.S.C. § 12188 (private right of action exists for enforcement of Title III against private entities).

### A.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is appropriate when the pleadings, depositions, affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*  Rule 56(c) empowers a court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." FDIC vs. Alexander, 78 F3d 1103, 1106 (6th. Cir. 1996). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. At 323, 106 S. Ct. at 2553. Once the movant meets this burden,

the non-movant must come forward with specific facts showing that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." <u>Winningham vs. North Am Resources Corp</u>,42 F3d 981, 984 (6th Cir. 1994). The evidence and all inferences thereof must be construed in the light most favorable to the non-moving party. <u>Matsushita Elec Indus Co, Ltd vs. Zenith Radio Corp</u>,475 US 574, 587, 106 S Ct 1348, 89 LED 2d 538 (1986); <u>Ertech Elec, Inc vs. Mahoning County Commissioner</u>, 85 F3d 257, 259 (6th Cir. 1996). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson vs. Liberty Lobby, Inc</u>, 477 US 242, 247-48, 106 S Ct 2505, 91 LED 2d 202 (1986); See also <u>Hartliep vs. McNeil Ab</u>, Inc, 83 F3d 767, 774 (6th Cir. 1996).

Additionally, a party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The opposing party must come forward with "specific facts showing that there is a genuine issue for

trial." <u>First National Bank vs. Cities Serv Co</u>, 391 US 253, 270, 88 S Ct 1575,20 LED 2d

569 (1968); Mere allegations or denials in the non-movant's pleadings will not meet this

burden. <u>Anderson</u>, supra, at 248. Further, the non-moving party cannot rest on its

pleadings to avoid summary judgment. It must support its claim with some probative

admissible evidence. <u>Craft vs. United States</u>, 991 F2d 292, 296 (6th Cir.) Cert den'd 510

US 976, 114 S Ct. 467, 126 LED 2d 419 (1993).

## B   DEFENDANT'S STORE IS A PLACE OF PUBLIC ACCOMMODATION UNDER THE ADA

Title III of the ADA provides in pertinent part that "[n]o individual shall be

discriminated against on the basis of disability[3] in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations of any place of

public accommodation..."  42 U.S.C. §12182(a).  A 'public accommodation' is defined

by the ADA as including shopping plazas and malls.  42 U.S.C. §12181.

In the instant claim, the Defendant's property is a market.  Defendant has been the

owner of this property since December 2006. (See Exhibit C, Defendant's Answer to

Interrogatories, Interrogatory 2) The property is a public accommodation within the

purview of the ADA and must be compliant with the provisions of the ADA.

Architectural barriers to access at the market impede in the full and equal enjoyment of

the Defendant's property by the Plaintiff.  Therefore, these barriers discriminate against

---

[3]   The ADA defines 'disability' to mean, with respect to an individual: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment.  42 U.S.C. §12102(2).

the Plaintiff in violation of the ADA, and there is no genuine issue of material fact as to the existence of barriers on Defendant's property.

## C.   DEFENDANT, AS OWNER/OPERATOR OF A PLACE OF PUBLIC ACCOMMODATION, IS LIABLE FOR NONCOMPLIANCE WITH THE ADA

Liability for noncompliance with the ADA is imposed upon "any person who owns, leases (or leases to), or operates a place of public accommodation" that discriminates[4] against an individual on the basis of disability.  42 U.S.C. §12182.

In the case at bar, Defendant has admitted to ownership of the subject property, owning such since 2006.  Since Defendant's property, as place of public accommodation, contains numerous barriers to access for disabled individuals, it is in violation of the ADA. Defendant has provided no expert report of their own to refute this. Therefore, liability for such ADA noncompliance on Defendant's property must be imposed upon the Defendant.

In conclusion, the Defendant, as owner or operator of a place of public accommodation, is liable for noncompliance with the ADA and therefore, there is no genuine issue of material fact as to the Defendant's liability.

---

[4]   Discrimination includes the failure to remove 'architectural barriers' in existing facilities where such removal is 'readily achievable.'  42 U.S.C.  §12182(b)(2)(A)(iv). Where an entity can demonstrate that the removal of a barrier is not readily achievable, discrimination also includes the failure to make such facilities available through alternative methods if such methods are readily achievable.  42 U.S.C. §12182(b)(2)(A)(v).

### D.   PLAINTIFF HAS THE REQUISITE STANDING TO BRING SUIT TO ENFORCE COMPLIANCE UNDER THE ADA

In order to state a claim under the ADA, a Plaintiff must allege that she "(1) has a disability; (2) is a qualified individual; and (3) was unlawfully subject to discrimination because of [her] disability."  Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016).

Standing requires meeting three elements under Article III, § 2:

    a.  injury in fact to the Plaintiff;

    b.  causation of that injury by the Defendant's complained-of conduct; and

    c.  a likelihood that the request for relief addresses that injury.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Coyne  v.  Am.  Tobacco Co., 183  F.3d  488, 494 (6th  Cir.  1999).

In compliance with the requirements of Lujan, the Plaintiff qualifies as an individual with disabilities because she has a degenerative disk disease, is unable to ambulate unassisted, and must utilize a cane to walk.  Lucio Affid,, Exhibit A.  Ms. Lucio has visited the property which forms the basis of this lawsuit and plans to return to the property to avail herself of the goods and services offered to the public at the property, but for its non-compliance.  Lucio Affid..  She therefore has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this property.

Therefore, the Plaintiff has alleged an injury-in-fact, shown Defendant's conduct to be the cause of the injury, and has shown the relief requested will address the injury.

In <u>Aikins v. St. Helena Hospital</u>, 843 F. Supp. 1329, 1334 (N.D. Cal. 1994), the Court held that an *alleged* violation of the ADA is an injury *sufficient* to give rise to an Article III case or controversy.  (emphasis added).  Here, the individual Plaintiff alleges that he has been denied the equal use and enjoyment of the Defendant's place of public accommodation.  There is no question that the injury complained of, the discrimination in the denial of equal use and enjoyment of the place of public accommodation, is an ADA violation.  Finally, the injury will be redressed by a favorable decision because the removal of barriers to access will permit the equal use and enjoyment of the property by the disabled.  <u>Binno v Am. Bar. Assn</u>. 826 F.3d 338 (6th Cir. 2012) *See also* <u>Generally, Atakpa v. Perimeter OB/GYN Assoc.</u>, 912 F. Supp. 1566, 1573 (N.D. Ga. 1994).

Pursuant to <u>Lujan</u>, the Plaintiff is required to show he has suffered an "'injury-in-fact' that is concrete and particularized and actual or imminent; the injury is very traceable to the callous action of the Defendant; and it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision." Id. at 561.

In the case at bar, the Plaintiff has shown a concrete and imminent injury that is traceable to the Defendant's actions.  The Plaintiff has visited the property and desires to avail herself of the goods and services available at the Defendant's property.  In its current form, the Defendant's property is not compliant with the ADA and is therefore inaccessible to persons with physical disabilities.  Therefore, the Defendant's removal of

the barriers to access that are not compliant with the ADA will redress the Plaintiff's injury.

### E.   DEFENDANT HAS FAILED TO COMPLY WITH THE ADA

Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that has existed prior   to January 26, 1992; 42 USC §12182(b)(2)(A)(IV), 28 CFR §36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation, since January 26, 1992, then the Defendant is required to insure, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and usable by individuals with disabilities.  42 USC 12183(a)(2), 28 CFR, §36.402. Finally, if the Defendant's facility is one which was designed and constructed for first occupancy, subsequent to January 26, 1993, as defined in 28 CFR §36.401, then the Defendant's facility must be readily accessible to and usable by individuals with disabilities, as defined by the ADA, except where structurally impracticable. 42 USC 12183(a)(1), 28 CFR §36.401.

In assessing liability for the numerous violations, uncontested by Defendant, Plaintiff has utilized the 2010 Standards. The 2010 Standards are the applicable and governing standard. Elements that have not been altered in existing facilities on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards are not required to be modified in order to comply with the requirements set forth in the 2010 Standards. 28 CFR 36.304(d)(2)(i). In the

present matter, Plaintiff conducted an initial inspection of the premises on October 26, 2021. That report shows that there was no designated accessible parking, no access to the sidewalk and there was an excessively steep slope at the door. Without a doubt, Defendant was not in compliance with the 1991 or the 2010 Standards whatsoever. The Code of Federal Regulations further state that, **after March 2012**, elements in existing facilities that do not comply with the corresponding technical and scoping specifications for those elements in the 1991 Standards, must be modified to the extent readily achievable to comply with the 2010 Standards. 28 CFR §35.304(d)(2)(ii)(B). As such, it is clear that the 2010 Standards are applicable to this matter.

Defendant is unable to even rely on the safe harbor provision, which provides that elements that **have not been** altered in existing facilities on or after March 15, 2012, and that comply with the corresponding 1991 Standards, are not required to bring their property compliant to the 2010 Standards. 28 CFR §35.150(b)(2)(1). As previously stated, Defendant was not in compliance with the 1991 Standards and has not presented one scintilla of evidence to demonstrate they were.

Even were Defendant to continue to argue that the 1991 Standards are applicable, those Standards are not pertinent since Defendant made alterations to the existing property. On or about July 16, 2022, Defendant hired a contractor to re-stripe the parking lot, repair cracks in the asphalt, install a ramp from the parking area and to install a ramp at the front door. (See Defendant's Responses to Plaintiff's Interrogatories, invoices, attached here as Exhibit C) New construction and **alterations** subject to 28 CFR §36.402

15

(alterations) shall comply with the 2010 Standards if the start of physical construction or alterations occurs on or after March 15, 2012. 28 CFR §406.(a)(3). An alteration is defined as any change that affects or could affect the usability of the building. Alterations include, but are not limited to, remodeling, renovation, and/or resurfacing of circulation paths or vehicular ways. 2010 ADAAG Standard 106.5. Defendant's alterations to his property were clearly completed after the aforementioned deadline. Therefore, the 2010 Standards are applicable.

In the subject case, the Defendant's ownership of the property is undeniable. Therefore, Defendant is subject to the readily achievable barrier removal standards of Title III of the ADA.  42 U.S.C.A. §12182(b)(2)(A)(IV), 28 CFR §36.304(a).  42 USCA §12182(b)(2)(A)(X), specifies that discrimination includes, "failure to remove architectural barriers...where such removal is readily achievable".  The statute provides further that "when entity can demonstrate that the removal of a barrier...is not readily achievable, (discrimination includes) a failure to make such goods, services and facilities available through alternative methods, if such methods are readily achievable".  42 USC §12182(b)(2)(A)(V).

The term "readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include—

    (A) The nature and cost of the action needed ...;

(B) The overall financial resources of the facility, or facilities involved in the action;

(C) The number of persons employed at such facilities;

(D) The effect on expenses and resources, or the impact otherwise of such action on the operation of the facility;

(E) The overall resources of the covered entity;

(F) The overall size of the business of the covered entity with respect to its number of employees; the number, type and location of its facility; and,

(G) Type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity; the geographic separateness, administrative relationship of the facility, or facilities in question to the covered entity.  See 42 USC §12181(9)(A)(B)(C) and (D).

The Department of Justice contains a list of 21 examples of modifications that are readily achievable, which specifically include installing ramps and creating designated accessible parking. (See U. S. Department of Justice, The Americans with Disabilities Act, Title III Technical Assistance Manual, Covering Public Accommodations and Commercial Facilities (Nov. 1993))    Title III is silent as to who bears the burden of proving that removal of an architectural barrier is, or is not, readily achievable.  Court's addressing the issue have generally found that §12182(b)(2)(A)(IV), read together with

§12182(b)(2)(A)(V), provides an affirmative defense with the facility. See <u>Colorado Cross Disability Coalition v. Hermanson Family, LTD.</u>, 264 F.3d 999, 1002, (10th Cir. 2001); <u>Pascuiti v. New York Yankees</u>, 87 F. Supp. 2d. 221 (S.D. NY 1999). The preamble to the regulations itself make specific reference to the "readily achievable defense" (See 28 CFR Part 36 App.B at 688(2002)).

While labeling the readily achievable standard an "affirmative defense", courts have nevertheless held that Plaintiff first bears the initial burden, requiring the Plaintiff to present evidence  tending to show the suggested barrier removal is readily achievable. If the Plaintiff does so, the Defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable. See, e.g. <u>Colorado Cross</u>, 264 F.3d 1002; <u>Pascuiti; (supra); Access for Disabled, Inc. v. Caplan</u>, case number 01-7310-CIV-Jordan (SD Fla. 2002).

In <u>Colorado Cross</u>, it was held that a Plaintiff must initially present evidence intending to show that the suggested removal is readily achievable under the particular circumstances. If Plaintiff does so, Defendant then bears the ultimate burden of persuasion that the barrier removal is not readily achievable. <u>Id</u>., at 1002-03.

      As set forth in <u>Caplan</u>, supra,

> "the Plaintiffs have met their initial burden of showing that their proposed barrier removals are readily achievable. They submitted an expert's report detailing the violations at the Central Medical Plaza. For each violation listed, the report contains specific recommendations for removal, outlining the method and cost of implementation. For

18

example, after noting that there is no accessible route from the street or the public sidewalk, the report states that "(t)he cost to remove the barrier identifying in paragraph 1, by installing a concrete path at the planter, which is 5' wide, and to add strapping to the building, is $500.00, (affidavit of Thomas Ricci at 4)...The Plaintiffs, for each violation, have provided a specific plan which is readily achievable, and a precise cost estimate.  They, therefore, have satisfied their initial burden." Page 7.

It should also be noted that Title III of the ADA was enacted in 1990, over thirty (30) years ago, and the obligation to undertake ADA improvements is a continuing one. *See:* U. S. Department of Justice, The Americans with Disabilities Act, Title III Technical Assistance Manual, Covering Public Accommodations and Commercial Facilities (Nov. 1993) (III 4.400 p.35).  Defendant has owned this property for sixteen (16) of those years, and yet remains non-compliant.

In the present matter, Plaintiff's Rule 34 expert report found numerous violations at the property. Plaintiff's expert estimated the total cost of repairs to make the property compliant at $4,050.00. This includes an estimate of: restriping parking lot - $1,250.00; installing a curb to the sidewalk - $1,500.00; adding maneuvering space at ice machine - $1,200.00; create a ramp at the door entrance - $800.00; and leveling out the high threshold at the door - $300.00.

Defendant's gross revenue in 2021 was $55,434.00. (See Defendant's Answer to Plaintiff's Interrogatory 10, attached hereto as Exhibit C). Plaintiff submits that repairs of less than $5,000.00 to make the property compliant is certainly readily achievable, particularly in light of the fact that Defendant has owned this property for sixteen years

and has done absolutely nothing in the past sixteen years to make it accessible to disabled individuals. Defendant only attempted to make the property compliant after a lawsuit for violation of the ADA was instituted against him.

**WHEREFORE**, Plaintiff requests that Summary Judgment be entered in Plaintiff's favor as there exists no genuine issue of any material facts. Additionally, Plaintiff requests that the Court Order that the Defendant bring its property into immediate compliance with the ADA and award Plaintiff her attorney's fees, and litigation expenses, including expert fees and costs, and damages for Plaintiff, to be submitted under a separate Motion.

Respectfully submitted,


By: /s/ Pete M. Monismith____
Pete M. Monismith, Esq.
3945 Forbes Ave., #175
Pittsburgh, PA 15213
Ph: 724-610-1881
Fax: 412-258-1309
Pete@monismithlaw.com



## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system upon all parties of record this 2nd day of January 2023.


By: /s/ Pete M. Monismith____

20

Pete M. Monismith, Esq.
3945 Forbes Ave., #175
Pittsburgh, PA 15213
Ph: 724-610-1881
Fax: 412-258-1309
Pete@monismithlaw.com